1
2
3
4
5
6
7
8
9
10
11
12
13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL LONG,

               Plaintiff,

     v.

CITY OF SEATTLE, et al.,

               Defendants.

No. C05-1664P

ORDER GRANTING CITY
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

14
15
16
17
18
19

     This matter comes before the Court on a pleading titled "Motion of Defendants the City of Seattle and Seattle Police Officers McLaughlin, Bender and Hockett for Judgment of Dismissal." (Dkt. No. 41). Through this motion, the City and Officers McLaughlin, Bender, and Hockett request summary judgment on all claims asserted against them. The City also argues that summary judgment should be entered in favor of Defendant Dustin Ay, a former Seattle police officer who has not yet appeared. The Court will refer to the City of Seattle and the police officers as the "City Defendants."

20
21
22

     Having reviewed the papers and pleadings submitted by the parties, and finding that oral argument is not necessary to decide this motion,[1] the Court GRANTS the City Defendants' motion. The reasons for the Court's order are set forth below.

23
24
25

_____

    [1] Consistent with Local CR 7(b)(4), the City Defendants included a request for oral argument in the caption of their motion. Plaintiff did not include such a request in the caption of his responsive brief.

ORDER - 1

**Background**

At about 3:00 a.m. on August 21, 2004, Plaintiff Michael Long was shot by Leroy Cummings, a private citizen. Mr. Long was shot in a parking lot next to Club Medusa, a Seattle nightclub. Mr. Cummings was tried and acquitted on charges of second-degree attempted murder against Mr. Long in state court.

In this lawsuit, Plaintiff has sued four Seattle police officers who were in the vicinity of Club Medusa on night of the shooting, as well as the City of Seattle, Belltown Enterprises LLC (dba as Club Medusa), and Belltown Business Association. Plaintiff has brought claims against the police officers under 42 U.S.C. § 1983, as well as state-law negligence claims against all defendants and claims for negligent hiring, supervision, and retention against the City of Seattle.

The four police officers named in Plaintiff's amended complaint are Jason Bender, Dustin Ay, Chad McLaughlin, and David Hockett. Officers Bender and Ay were on-duty at the time of the shooting. Officers McLaughlin and Hockett were off-duty, although in uniform. Plaintiff alleges that the two off-duty officers were working to provide security for Club Medusa and the surrounding areas, in violation of a City of Seattle policy that prohibits off-duty officers from working at establishments that serve alcohol. Plaintiff also alleges that Officers McLaughlin and Hockett falsified information on their applications to work off-duty. Plaintiff has also made various allegations of misconduct by Officer McLaughlin during his tenure as a police officer.

Plaintiff has submitted a declaration that provides his version of events on the night of the shooting. (Dkt. No. 49-4). Although Plaintiff's declaration states that it is made "on oath," it does not include a statement that the declaration is true and correct under penalty of perjury, as required by 28 U.S.C. § 1746. Putting this concern aside, Plaintiff's declaration states as follows:

> * Plaintiff drove to Club Medusa shortly before 3:00 a.m. on August 21st with three friends in a Cadillac Escalade, planning to promote a CD for a musician. Plaintiff tried to park in front of Club Medusa, but one of the four officers in front of the club told

1    him that he could not park there.  When Plaintiff asked the officer where he should

2    park, the officer told him to pull into the parking lot next to the club and pointed out

3    the entrance.  In his declaration, Plaintiff does not specifically identify the officer who

4    told him to park in the lot.  However, in his brief he states that the officer was Jason

5    Bender, who was on-duty that night.

6    *    Plaintiff pulled into the parking lot and parked as near the entrance as he could.  Two

7    of Plaintiff's friends passed out flyers for about ten minutes.  At some point, an Impala,

8    presumably driven by Leroy Cummings, pulled into the parking lot.  The driver of the

9    Impala started honking his horn and began yelling at Plaintiff to "get that piece of shit

10   out of the way."  One of Plaintiff's friends talked to the other driver and Plaintiff pulled

11   the car up a few feet, but the driver continued "honking his horn and yelling at the top

12   of his lungs to move."

13   *    Plaintiff got out of his car and approached the Impala.  Plaintiff states "[w]e got into a

14   shouting match, which lasted three or four minutes.  The Impala driver was angry, and

15   yelled threats like 'you don't know who you are dealing with,' and 'I'm serious . . . .

16   you don't think I'm serious?'  He also continued honking his horn."  Plaintiff

17   "continued yelling back at him, telling him that he had room to get by, and eventually

18   shouted 'fuck you.'"  Plaintiff states that he is "certain that everyone in the vicinity

19   could and did hear all the yelling and horn honking, and the angry and threatening tone

20   of the argument."

21   *    Plaintiff states that "after several minutes of this back-and-forth yelling and arguing, I

22   walked away from the Impala."  Plaintiff states that the driver of the Impala called him

23   back.  Plaintiff returned close enough for the driver to grab him, and the driver then

24   shot him.

25

ORDER - 3

* Plaintiff disputes the police officers' estimates of the distance between where the shooting took place and where the officers were standing in front of the club. In their declarations, the officers estimate the distance as 180-200 feet. Plaintiff's declaration does not provide an estimate of the distance, but he asserts that "I was parked pretty close to the closest entrance, which was directly adjacent to the club." In his opposition brief, Plaintiff asserts that the distance was "more like sixty to seventy feet." (Opp. at 10).

* In his brief, Plaintiff states that his argument with Mr. Cummings took place "in full view and hearing of the Defendant Officers." (Dkt. No. 49 at 8). To support this assertion, Plaintiff simply cites "Exhibits 9 through 15." Id. These exhibits are excerpts from witness interviews and statements taken by attorneys and the police in connection with the criminal case against Mr. Cummings, as well as excerpts from motions in limine offered by the parties in the criminal proceeding against Mr. Cummings. Putting aside the obvious admissibility problems with these exhibits, Plaintiff does not point to any specific statement in these exhibits that indicates that the argument took place "in full view and hearing" of the police officers.

In his amended complaint in this matter, Plaintiff alleged that "Officer Bender entered the parking lot to discuss the situation [i.e., the argument between Plaintiff and Mr. Cummings] and spoke to both Plaintiff and Leroy Cummings, giving traffic instructions." (Dkt. No. 46 at 4). However, Officer Bender has submitted a declaration stating that "I had not been in the area of the parking lot next to the Club Medusa prior to hearing what appeared to have been a gunshot" and that "[a]t no time prior to hearing the gunshot, did I even enter the parking lot to discuss any matter with either Mr. Long or Mr. Cummings, or anyone else." (Dkt. No. 42-1 at ¶ 17). The City Defendants have also introduced testimony that Plaintiff provided at Mr. Cummings' criminal trial, in which Plaintiff was asked "[o]ther than you and Mr. Stephens [one of Mr. Long's friends], [did] anyone else approach Mr.

ORDER - 4

1   Cummings and his Impala."  (Dkt. No. 45-4 at 36).  Plaintiff stated "No, not that I can think of."  Id.

2   In his opposition to the City Defendants' motion, Plaintiff has offered no evidence to contradict this

3   evidence that Officer Bender did not enter the parking lot to discuss the situation with Plaintiff and

4   Mr. Cummings.

5                                                    **Analysis**

6   **1.      Summary Judgment Standard**

7            Rule 56(c) provides, in part, that summary judgment is appropriate if "the pleadings,

8   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

9   show that there is no genuine issue as to any material fact and that the moving party is entitled to a

10  judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is not warranted if a material

11  issue of fact exists for trial.  Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert.

12  denied, 516 U.S. 1171 (1996).  The underlying facts are viewed in the light most favorable to the party

13  opposing the motion.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

14  **2.      Section 1983 Claims**

15           In his amended complaint, Plaintiff raises the following claim under 42 U.S.C. § 1983:

16           Defendant Officers wrongfully deprived Plaintiff of his federally guaranteed Constitutional and
             other legal rights in violation of 42 U.S.C. § 1983 by actions, including but not limited to,
17           failing to police in a dangerous situation, and creating the hazard that resulted in Plaintiff's
             shooting.  As a direct and proximate result of Defendants' deprivation of Plaintiff's federally
18           guaranteed Constitutional and other legal rights, Plaintiff sustained injuries thereby resulting in
             physical pain, suffering, and permanent disability as well as emotional distress and anxiety, all
19           of which has resulted in damages for pain and suffering in an amount to be proven at time of
             trial and for medical expenses which are ongoing.  Plaintiff sustained a gunshot wound[,]
20           permanent paralysis, and other injuries.

21  (Dkt. No. 46 at 6).

22           In his amended complaint, Plaintiff does not identify which particular constitutional provision

23  or other "federally guaranteed . . . legal rights" were allegedly violated by the police officers.

24  However, the City Defendants maintain, and Plaintiff does not dispute, that his § 1983 claims are

25

ORDER - 5

1   properly analyzed under the Fourteenth Amendment, particularly the Fourteenth Amendment's

2   substantive due process clause.

3           A.       <u>Section 1983 Claims Against Police Officers</u>

4           In general, the Fourteenth Amendment's Due Process Clause does not provide citizens with a

5   constitutional right to protection from harm caused by private actors.  The Supreme Court has held:

6   > [N]othing in the language of the Due Process Clause itself requires the State to protect the life,
7   > liberty, and property of its citizens against invasion by private actors.  The Clause is phrased as
8   > a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety
9   > and security.  It forbids the State itself to deprive individuals of life, liberty, or property
> without "due process of law," but its language cannot fairly be extended to impose an
> affirmative obligation on the State to ensure that those interest do no come to harm through
> other means.

10   <u>DeShaney v. Winnebago County Dep't of Soc. Servs.</u>, 489 U.S. 189, 195 (1989).  The <u>DeShaney</u>

11   Court further held that "[i]f the Due Process Clause does not require the State to provide its citizens

12   with particular protective services, it follows that the State cannot be held liable under the Clause for

13   injuries that could have been averted had it chosen to provide them."  <u>Id.</u> at 196-97.  Therefore, "a

14   State's failure to protect an individual against private violence simply does not constitute a violation of

15   the Due Process Clause."  <u>Id.</u> at 197.

16           As the City Defendants note, there are two exceptions to the general rule that the state has no

17   constitutional duty to protect individuals from wrongful acts by third parties.  The first, known as the

18   "special relationship" exception, arises when the state takes a person into its custody and holds him

19   there against his will.  <u>See</u> <u>Estate of Amos v. City of Page</u>, 257 F.3d 1086, 1090 (9th Cir. 2001)  Since

20   there is no allegation that Mr. Long was in custody when he was shot, this exception does not apply.

21           The second exception is known as the "danger creation" exception.  This exception exists

22   where the state "affirmatively places the plaintiff in a dangerous situation."  <u>Id.</u>  The Ninth Circuit has

23   held that this exception "necessarily involves affirmative conduct on the part of the state in placing the

24   plaintiff in danger."  <u>L.W. v. Grubbs</u>, 974 F.2d 119, 121 (9th Cir. 1992).  In such cases, "it is not

25   sufficient for the plaintiff to demonstrate that the state official was grossly negligent."  <u>Huffman v.</u>

1  County of Los Angeles, 147 F.3d 1054, 1059 (9th Cir. 1998).  Instead, "the plaintiff must show that

2  the state official participated in creating a dangerous situation, and acted with deliberate indifference

3  to the known or obvious danger in subjecting the plaintiff to it."  L.W. v. Grubbs, 92 F.3d 894, 900

4  (9th Cir. 1996).

5        For example, in Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989), the court held that a police

6  officer could be held liable under the danger creation exception when the plaintiff was raped after the

7  officer impounded the vehicle in which she was a passenger and left her in a high-crime area late at

8  night.  Similarly, in Penilla v. City of Huntington Park, 115 F.3d 707 (9th Cir. 1997), the court held

9  that police officers could be held liable under the danger creation exception when they responded to a

10  911 call, found a person in grave need of medical care, cancelled a request for paramedics, moved the

11  person inside his house, locked the door, and left the residence.

12        In his opposition brief, Plaintiff asserts that the police officers "affirmatively acted to cause the

13  shooting by directing both the shooter and the victim into the parking lot, and then ignoring the

14  resulting argument and threats that led to the shooting."  (Pl.'s Opp. at 16).   Viewing the evidence in

15  the light most favorable to Plaintiff, the affirmative acts allegedly taken by the police officers were as

16  follows:  (1) one of the officers directed Mr. Long to park in the parking lot next to Club Medusa; and

17  (2) the one of the officers later directed Mr. Cummings to the same parking lot.  This kind of routine

18  traffic direction cannot be regarded as affirmatively placing Plaintiff in a dangerous situation.  There is

19  no evidence that the parking lot, an open-air lot adjacent to the club, was a dangerous place to direct

20  Plaintiff to park his car.  There is also no evidence that Mr. Long was compelled by the police to

21  remain in the lot after he parked his car or that the police had any reason to foresee that directing Mr.

22  Long and Mr. Cummings to the lot would result in an altercation between the two.  The situation here

23  is not remotely analogous to the "danger creation" situations presented in Wood or Penilla.

24        Finally, even assuming that the police officers saw or heard the argument between Mr. Long

25  and Mr. Cummings, the police were under no constitutional obligation to intervene in the argument.

ORDER - 7

1    See, e.g., DeShaney, 489 U.S. at 203 (no liability under § 1983 where "[t]he most that can be said of

2    the state functionaries in this case is that they stood by and did nothing when suspicious circumstances

3    dictated a more active role for them.").

4         In sum, Plaintiff has not offered sufficient evidence to create a genuine issue of material fact on

5    whether any of the four police officers violated his rights under the Constitution.  As a result,

6    Plaintiffs' claims against the police officers under 42 U.S.C. § 1983 will be dismissed.

7         B.      Section 1983 Claims Against the City

8         In his complaint, Plaintiff does not clearly allege § 1983 claims against the City of Seattle.

9    However, in his opposition brief, Plaintiff appears to argue that the City may be held liable under §

10   1983 under various theories.  See, e.g., Pl.'s Opp. at 17 (maintaining that "the City of Seattle . . . [is]

11   liable under § 1983, under the Public Function test, the Joint Action Test, and the Nexus test.").

12        The Court finds that Plaintiff has not offered sufficient evidence to create a triable issue of fact

13   on whether the City of Seattle may be held liable under § 1983 for violating his constitutional rights.

14   "A municipality may be held liable under § 1983 'when execution of a government's policy or custom,

15   whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

16   policy, inflicts the injury . . . .'"  Jackson v. City of Bremerton, 268 F.3d 646, 653 (9th Cir. 2001)

17   (quoting Monell v. Dept' of Soc. Servs., 436 U.S. 658, 694 (1978)).   As the City Defendants note:

18           [A] municipality can be found liable under § 1983 only where the municipality *itself* caused the
             constitutional violations at issue.  *Respondeat superior* or vicarious liability will not attach
19           under § 1983.  "It is only when the 'execution of the government's policy or custom . . .
             inflicts the injury' that the municipality may be held liable under § 1983."
20
21   City of Canton v. Harris, 489 U.S. 378, 385 (1989) (emphasis in original) (internal citations omitted).

22   As a result, in order to maintain a § 1983 claim against the City, Plaintiff must identify a municipal

23   policy or custom that caused a violation of his constitutional rights.

24        In essence, Plaintiff maintains that the City had a policy of ignoring rules that prohibited police

25   officers from working off-duty at establishments that served alcohol.  Even assuming for the purposes

of this motion that the City had such a policy, there is no basis to find that this policy was a proximate

cause of any violations of his constitutional rights.  Most fundamentally, Plaintiff has not raised a

triable issue of fact on whether any of the police officers violated his constitutional rights.  It is well-

established that a municipality cannot be held liable under § 1983 if a plaintiff has suffered no

constitutional injury by individual police officers.  See City of Los Angeles v. Heller, 475 U.S. 796,

799 (1986).  To the extent that Plaintiff may intend to bring an action against the City under § 1983

for negligent supervision, retention, and hiring, such a claim must also fail for this reason.  See, e.g.,

Webber v. Mefford, 43 F.3d 1340, 1344-45 (10th Cir. 1994) ("A claim of inadequate training,

supervision, and policies under § 1983 cannot be made out against a supervisory authority absent a

finding of a constitutional violation by the person supervised").

In short, even if the City of Seattle failed to enforce its policy against allowing police officers

to work at establishments that serve alcohol, Plaintiff has not offered evidence that the City's policy or

custom caused him to be deprived of any of his constitutional rights.  As a result, Plaintiff's § 1983

claims against the City must be dismissed.

**3.      State-Law Negligence Claims**

Plaintiff has also brought state-law negligence claims against all defendants.  Plaintiff's

negligence claims are stated in his amended complaint as follows:

> Defendant Officers had a duty to perform police duties, in spite of being hired in an off-duty
> private capacity, and would have had such duty even if they were not in uniform.  Defendant
> Officers McLaughlin and Bender breached that duty when they directed the vehicles into the
> parking lot, then observed the loud, long, heated argument between Plaintiff and Leroy
> Cummings, which included threats of violence, and failed to take any action to prevent such
> violence, thereby creating the hazard that led to Plaintiff's damages.
>
> This failure to act caused and proximately caused severe damage to Plaintiff. . . .
>
> Defendants Belltown Enterprises, LLC, Belltown Business Association and the City of Seattle
> are therefore vicariously liable for this negligence by the doctrine of *respondeat superior*.  The
> City of Seattle is further liable for formulating the policy that allowed uniformed off-duty
> officers to work as private security guards, and for failing to enforce its policy of prohibiting
> such officers to work for establishments that serve alcohol.

ORDER - 9

1    (Dkt. No. 46 at 5).

2    Under Washington law, the elements of a negligence claim include existence of a duty to the

3    plaintiff, breach of that duty, and injury to the plaintiff proximately caused by the breach.  See Sheikh

4    v. Choe, 156 Wn.2d 441, 447-48 (2006).  The City Defendants argue that Plaintiff cannot show that

5    the officers or the City breached a duty to Plaintiff.  They also suggest that even if there had been a

6    breach of a duty, Plaintiff's injuries were not proximately caused by the actions of the City Defendants.

7    A.    Breach of a Duty

8    In their opening brief, the City Defendants argue that Plaintiff's negligence claims are barred by

9    the public duty doctrine.  Washington law provides that:

10       Under the "public duty doctrine," there is no liability for a public official's negligent conduct
         unless it is shown that "'the duty breached was owed to the injured person as an individual and
11       was not merely the breach of an obligation owed to the public in general (i.e., a duty to all is a
         duty to no one).'"
12
13   Torres v. City of Anacortes, 97 Wn. App. 64, 73 (1999)(internal citations omitted).  There are four

     exceptions to the public duty doctrine: (1) special relationship; (2) legislative intent; (3) failure to
14
     enforce; and (4) the rescue doctrine.  Garibay v. State, 131 Wn. App. 454, 461 (2005).  The City
15
     Defendants argue that none of the exceptions apply in this case.
16
17   Plaintiff offers no response to the City Defendants' arguments regarding the public duty

18   doctrine, nor does he maintain that any exceptions to the doctrine would apply in this case.  Indeed,

     Plaintiff appears to concede that the on-duty police officers (Officers Bender and Ay) cannot be held
19
     liable for his injuries under a negligence theory.  Instead, Plaintiff argues that Officers McLaughlin and
20
21   Hockett, the two off-duty officers, violated their duties under a "possessor of land" theory.  To

22   support this argument, Plaintiff cites the following passage from § 371 of the Restatement (Second) of

     Torts (1965):
23
24       A possessor of land is subject to liability for physical harm to others outside of the land caused
         by an activity carried on by him thereon which he realizes or should realize will involve
         unreasonable risk of physical harm to them under the same conditions as though the activity
25       were carried out in a neutral place.

ORDER - 10

1    By way of example, § 371 of the Restatement notes that a farmer who burns brush on his property

2    close to a public highway may be held liable for accidents that result if a high wind blows smoke in a

3    thick curtain across the highway, obstructing the view of passing motorists.  Id. Illus. 1.

4          Plaintiff's theory appears to be that Club Medusa "had a duty to provide some sort of security

5    to handle the crowds that were leaving its premises," that "[o]ne of the officers directed both Long

6    and Cummings into the parking lot," and that the officers allegedly "ignored a loud, long, threatening[]

7    argument, and repeated honking of horns."  (Dkt. No. 49 at 13).  Plaintiff argues that "[h]ere, the

8    officers failed to control the actions of the crowd, involving a shooter and his victim that were both

9    directed by those officers into a parking lot.  The defendants created and/or failed to make safe the

10   activities of the 'loud and boisterous' crowd."  Id. at 14.

11         The only Washington case that Plaintiff has cited to support his theory is Hutchins v. 1001

12   Fourth Avenue Associates, 116 Wn.2d 217, 222-23 (1991).[2]  Rather than supporting his argument,

13   Hutchins suggests that a Washington court would reject Plaintiff's expansive theory of liability.  In

14   Hutchins, the court held that an occupier of land did not have a duty to provide security measures on

15   the premises to protect passersby from the risk of criminal assault, noting "[t]he general rule at

16   common law . . . that a private person does not have a duty to protect others from the criminal acts of

17   third parties."  Id. at 223.  The court observed that if it were to hold the building owner liable, "we

18   would essentially make urban land possessors the insurers of all those passing on public sidewalks or

19   streets" and that a "land possessor does not owe a duty of reasonable care as to the whole world" and

20   "is not the insurer of all those who may enter or pass by his land."  Id. at 233.  Cf. Nivens v. 7-11

21   Hoagy's Corner, 133 Wn.2d 192, 205-06 (1997) (holding that business does not owe a general duty to

22   provide security personnel to prevent criminal behavior on business premises).

23

24   _____

          [2]  The non-Washington cases cited by Plaintiff are neither binding on this Court nor are they
25   persuasive.

1        Similarly, Plaintiff's theory of liability for negligence in this case is not viable under

2   Washington law.  There is no evidence that Club Medusa or any of the employers of the off-duty

3   officers possessed the parking lot where the shooting occurred.  At most, Plaintiffs' evidence may

4   suggest that the officers directed Plaintiff and Mr. Cummings into a parking lot adjacent to the club

5   and failed to intervene when the two men got into an argument.  These type of facts do not fit within

6   the theory of liability outlined in § 371, nor do such facts give rise to liability under <u>Hutchins</u> or any

7   other Washington authority cited by Plaintiff.[3]

8        B.    <u>Causation</u>

9        Even if the officers breached a duty to Plaintiff under Washington law, the officers would only

10  be liable if such a breach proximately caused Plaintiff's injuries.  The Washington Supreme Court has

11  noted:

12       There are two elements to proximate causation: cause in fact and legal causation.  "'Cause in
         fact' refers to the actual, 'but for,' cause of the injury, i.e., 'but for' the defendant's actions
13       [would the] plaintiff . . . be injured."  This question is normally left to the jury.  Legal causation
         is a much more fluid concept.  It is grounded "in policy determinations as to how far the
14       consequences of a defendant's acts should extend."  The focus in legal causation analysis is on
         "whether, as a matter of policy, the connection between the ultimate result and the act of the
15       defendant is too remote or insubstantial to impose liability."  This inquiry depends upon
         "'mixed considerations of logic, common sense, justice, policy, and precedent.'"
16
    <u>Tyner v. State Dep't of Soc. & Health Servs.</u>, 141 Wn.2d 68, 82 (2000) (internal citations omitted).
17
         Guided by these considerations, the Court finds that Plaintiff cannot establish legal causation
18
    under Washington law.  Although Plaintiff's injuries are tragic, it would defy logic and common sense
19
    to hold that his injuries were caused by the police officers or the City of Seattle.  None of the
20

21      [3] Plaintiff also suggests that Officers McLaughlin and Hockett may be liable under § 383 of
22  the Restatement (Second) of Torts, which provides:  "One who does an act or carries on an activity
    upon land on behalf of the possessor is subject to the same liability . . . for physical harm caused
23  thereby to others upon and outside of the land as though he was a possessor of the land."  This
    argument is equally unavailing, as it simply seeks to hold the officers liable as agents of Club Medusa
24  for directing traffic and failing to intervene during the argument.

25

1    defendants shot Plaintiff, nor did they compel Plaintiff to engage in an argument with Mr. Cummings.

2    At most, the officers directed Plaintiff and Mr. Cummings at different times to the same parking lot

3    and failed to intervene in an argument that was taking place at least 60-70 feet away.  As a matter of

4    policy, the Court finds that the connection between Plaintiff's shooting and the conduct of the City

5    Defendants is too remote to impose liability under Washington law.

6    **4.       Negligent Hiring, Supervision, and Retention Claim Against the City**

7           Finally, Plaintiff has brought a state-law claim for "negligent hiring, supervision, and retention"

8    against the City of Seattle with respect to Officer McLaughlin.  Plaintiff states this claim as follows:

9           . . . . Defendant City of Seattle failed to adequately enforce its own regulations concerning the
            work of off-duty officers.  Officer McLaughlin conducted himself in an inappropriate fashion
10          on at least four occasions in the past, violating standards promulgated by his employer the City
            of Seattle, four times being found to have committed conduct unbecoming and [sic] officer;
11          and that the City of Seattle knew or should have known of the Defendant Officer
            McLaughlin's continued unlawful conduct.

12          Plaintiff further alleges that Defendant City of Seattle failed to supervise or rectify the unlawful
13          conduct of Officer McLaughlin, in spite of knowing of improper conduct in the past.

14          Had Defendant City of Seattle properly supervised Officer McLaughlin, it would have
            determined that [he] was unsuitable for police work and should have taken steps to rectify his
15          unlawful conduct, including but not limited to discharging him from the police force.  Had
            Defendant King County [sic] not negligently supervised and retained Officer McLaughlin, and
16          had it enforced its own regulations concerning off-duty officers, Plaintiff would not have
            suffered injuries . . . .

17   (Dkt. No. 46 at 6-7).

18          In essence, Plaintiff suggests that if the City of Seattle had terminated or more closely

19   supervised Officer McLaughlin, Plaintiff would not have been shot.  For reasons similar to those

20   discussed earlier, this speculative claim must fail.  As noted above, Plaintiff has not offered sufficient

21   evidence to create a genuine issue of material fact on whether Officer McLaughlin breached a duty to

22   Plaintiff or whether Office McLaughlin's acts were the legal cause of Plaintiff's injuries.  Even viewing

23   the evidence in the light most favorable to Plaintiff, the evidence does not suggest that Plaintiff's

24   injuries would have been prevented if Officer McLaughlin had not been working off-duty in the

25

1   vicinity of Club Medusa on the night of August 21, 2004.  As a result, Plaintiff's claims against the

2   City for negligent hiring, supervision, or retention must be dismissed.

3                                                   **Conclusion**

4          For the reasons discussed above, summary judgment is GRANTED in favor of Defendants the

5   City of Seattle, Chad McLaughlin, Jason Bender, Dustin Ay, and David Hockett.  All claims against

6   these defendants are hereby DISMISSED with prejudice.

7          Following today's Order, only two corporate defendants remain in this case:  Belltown

8   Enterprises LLC (d/b/a Club Medusa) and Belltown Business Association.  Plaintiff has brought state-

9   law negligence claims against both defendants under a respondeat superior theory.  (Dkt. No. 46 at 5).

10  The present posture of the case raises two key questions:  (1) whether the Court should retain

11  supplemental jurisdiction over the remaining state-law claims following the dismissal of the federal

12  claims against the officers; and (2) whether Plaintiff may maintain any claims against the two corporate

13  defendants under a respondeat superior theory in light of the dismissal of all claims against the

14  individual officers.  These questions cannot be appropriately resolved by the Court on a sua sponte

15  basis.  Counsel for plaintiff and the remaining defendants should consider whether the remaining issues

16  may be resolved through stipulation and order or whether either side wishes to bring a motion directed

17  at one or both of these issues.

18         The Clerk is directed to send copies of this order to all counsel of record.

19         Dated:  October 31, 2006

20
                                            s/Marsha J. Pechman
21                                          Marsha J. Pechman
                                            United States District Judge
22

23

24

25

ORDER - 14